## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| BLUETARP FINANCIAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil no. 2:11-cv-291-NT |
| | ) | |
| MELLOUL BLAMEY | ) | |
| CONSTRUCTION S.C., LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING MOTION TO DISMISS

The Defendant, Melloul Blamey Construction S.C., Ltd. ("**MB Construction**"), has filed a Motion to Dismiss Plaintiff BlueTarp Financial, Inc.'s Complaint for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), lack of personal jurisdiction under Fed R. Civ. P. 12(b)(2), improper venue under Fed. R. Civ. P. 12(b)(3), and *forum non conveniens*.

The Defendant contends that: (1) the forum selection clause is not part of the agreement between the Defendant and the Plaintiff; (2) the forum selection clause is unreasonable and unenforceable; (3) if the clause is an enforceable part of the agreement between the parties, it provides for Maine state court jurisdiction over the Defendant, not Maine federal court jurisdiction; (4) the Court's assertion of personal jurisdiction over the Defendant violates the Fourteenth Amendment's due process guarantees and Maine's long-arm statute, 14 M.R.S.A. § 704-A (2003); (5) venue is improper under 28 U.S.C. § 1391(a) because the Court does not have

personal jurisdiction over the Defendant; and (6) the Court should dismiss the action against the Defendant based on *forum non conveniens*.

Because the parties have consented only to jurisdiction in Maine state courts, and the Court otherwise lacks personal jurisdiction, the Defendant's Motion to Dismiss is GRANTED.

## I.      STATEMENT OF FACTS

In July of 2009, BlueTarp Financial, Inc. ("**BlueTarp**"),[1] a Delaware corporation which provides credit to contractors, entered into a Credit Services Agreement with Contract Supply, LLC ("**Contract Supply**"),[2] a South Carolina corporation. Under this agreement, Contract Supply customers who wished to establish credit at Contract Supply were required to apply for credit accounts with the Plaintiff, BlueTarp. Richardson-Newton Declaration at ¶ 3-4. BlueTarp provided Contract Supply with commercial credit applications to give to customers who were interested in obtaining credit. *Id.* at ¶ 4.

MB Construction is a South Carolina general contracting corporation with its principal place of business in South Carolina. Mosser Declaration at ¶ 3. In 2009,

---

[1]      BlueTarp conducts the vast majority of its business at its office in Maine, Declaration of Tracey Richardson-Newton at ¶ 19 (Doc. No. 10)("**Richardson-Newton Declaration**"). BlueTarp conducts virtually all of its credit checks in Maine, *id.* at ¶ 21, and authorizes all purchases, maintains all customer records, generates all billing information, conducts all communications, and oversees all collection efforts in Maine. *Id.* at ¶¶ 21-22. BlueTarp also has an executive office in North Carolina, where its chief financial officer and a few sales and administrative functions are located. *Id.* at ¶¶ 24-25.

[2]      Contract Supply does not own property, operate facilities, have employees, or provide general contracting services in the State of Maine. Affidavit of Robert Andrew Mosser at ¶¶ 4-5 (Doc. No. 7-1)("**Mosser Declaration**").

MB Construction was working on construction projects in South Carolina and North Carolina, and it subcontracted with Contract Supply to purchase construction supplies for its projects. *Id.* at ¶ 18. In September of 2009, Contract Supply faxed a BlueTarp commercial credit application (the "**Credit Application**") to MB Construction so that MB Construction could apply for a BlueTarp credit account to make purchases on credit from Contract Supply. *Id.* at ¶ 12.

The Credit Application stated that it could be returned either to Contract Supply or to BlueTarp by fax or mail, at BlueTarp's Maine address. Richardson-Newton Declaration at ¶ 5. MB Construction filled out the Credit Application, signed it, and faxed the completed Credit Application to Contract Supply in South Carolina. Mosser Declaration at ¶ 12. Contract Supply faxed the Credit Application to BlueTarp in Maine, which received it on or around September 16, 2009. Richardson-Newton Declaration at ¶ 6.

Above the signature line on the Credit Application, there is a provision stating that:

> All provisions contained on this form are incorporated by reference into the BlueTarp Financial Account Agreement on the back page, and you agree to be bound by the BlueTarp Financial Account Agreement in the event your application is approved. The Blue Tarp Financial Account Agreement sets forth additional terms relating to the BlueTarp Purchasing Program. This application and the BlueTarp Financial Account Agreement constitute the complete agreement between you and BlueTarp Financial, Inc.

> Doc. No. 10-2 at 1.

On the back page of the application was the BlueTarp Financial Account Agreement ("**Account Agreement**"). Doc. No. 10-2 at 2. The Account Agreement stated that "[y]our use of the BlueTarp Financial Account constitutes acceptance of the following terms and conditions." Doc. No. 10-4 at 2. The Account Agreement includes a choice of law provision stating that "[t]his Agreement will be governed by the laws of the State of Maine," and a forum selection clause, providing that "[y]ou agree that in the event of default in payment, BlueTarp Financial may institute suit against you in the courts of the State of Maine, regardless of where you are geographically located or conduct business." *Id*.

Upon receipt of MB Construction's Credit Application, BlueTarp ran a credit check from its Maine office and decided not to extend credit based on MB Construction's history of slow payment and collections. Richardson-Newton Declaration at ¶ 7. On September 27, 2009, BlueTarp sent a letter to the Vice President of MB Construction, Andy Mosser, informing him that MB Construction's Credit Application had been denied. Doc. No. 7-2.

In January of 2010, BlueTarp re-reviewed MB Construction's Credit Application based on new information and decided to approve a line of credit for MB Construction. Richardson-Newton Declaration at ¶ 9. On January 29, 2010, BlueTarp called MB Construction and informed Mr. Mosser that MB Construction's Credit Application had been approved. *Id*. at ¶ 10. BlueTarp mailed MB Construction a "welcome letter" ("**Letter**") including the Defendant's approved credit limit and providing billing and payment information as well as a copy of the

Account Agreement. *Id.* The Letter was on BlueTarp's letterhead using BlueTarp's Maine address.

Between February 1, 2010 and June 13, 2011, BlueTarp approved $603,446.33 in charges made on MB Construction's BlueTarp account at Contact Supply for construction projects in North and South Carolina. Richardson-Newton Declaration at ¶ 12; Mosser Declaration at ¶ 17. Contract Supply sent invoices showing the charges to both MB Construction and BlueTarp. Doc. No. 10-5; Richardson-Newton Declaration at ¶ 13. BlueTarp advanced money to Contract Supply as payment for the charges and sent MB Construction monthly billing statements. Richardson-Newton Declaration at ¶ 14. At the top of BlueTarp's monthly statements is its Atlanta, Georgia address. Doc. No. 10-6. An attached payment stub states a South Carolina return address for BlueTarp and uses a Georgia address where BlueTarp has a lockbox. *Id.* MB Construction paid BlueTarp in full for charges due before May 10, 2011, but it owes BlueTarp more than $110,000 for subsequent charges. Richardson-Newton Declaration at ¶ 15-16.

BlueTarp maintained a log of its contacts with MB Construction. Doc. Nos. 10-7 & 10-8. The Court counts twelve contacts in this log between BlueTarp and Marie Millward, BlueTarp's contact at MB Construction, between January 29, 2010 and June of 2011, not including the initial telephone conversation between BlueTarp and Mr. Mosser. *Id.* Only two of these contacts appear to have been initiated by MB Construction. Doc. No. 10-7 at 5, 12.

The log shows that generally MB Construction paid Contract Supply directly. However, because Contract Supply and BlueTarp billed on different schedules, Ms. Millward was occasionally contacted by BlueTarp to send payment directly to BlueTarp to avoid the late payment penalties that MB Construction would incur if it waited to pay BlueTarp according to Contract Supply's billing schedule. On June 24, 2010, BlueTarp emailed Ms. Millward, informing her that overnight payments to BlueTarp should be sent to BlueTarp's Maine address, but that regular mail payments could be sent to the Georgia lockbox.

BlueTarp's log also shows that BlueTarp primarily contacted Contract Supply, which would in turn contact MB Construction. On September 28, 2010, the log states: "Call Amy or Melissa at Contract Supply WITH ANY COLLECTION ISSUES! DO NOT CALL THE CUSTOMER. Had conversation w/Amy/merch today – customer not happy with BTF extending calls regarding payment – that is their best customer – prefers to call them when past due." *Id.* at 8.

## II.    PROCEDURAL HISTORY

On July 28, 2011, BlueTarp brought suit in the District of Maine against MB Construction for breach of contract and unjust enrichment. On September 26, 2011, Defendant MB Construction filed its Motion to Dismiss. Briefing concluded on November 9, 2011, and oral argument was held on February 14, 2012.

A similar case, also involving BlueTarp and a Contract Supply customer, Matrix Construction Co., Inc. ("**Matrix Construction**"), was filed on the same date

as the instant suit and was assigned to Judge Singal. *Bluetarp Financial, Inc. v. Matrix Construction Co. Inc.*, Docket No. 2:11-cv-290-GZS. On February 23, 2012, Judge Singal dismissed that suit for lack of personal jurisdiction. Judge Singal held that the forum selection clause at issue in that case, which is the same as the clause involved in this case, was insufficient in itself to create personal jurisdiction over Matrix Construction in the federal court. Judge Singal then found that there were insufficient contacts between Matrix Construction and the State of Maine for the Court to exercise personal jurisdiction over Matrix Construction and granted Matrix Construction's motion to dismiss for lack of personal jurisdiction. The Court agrees with Judge Singal's conclusion. While there are a few factual differences between the case before Judge Singal and this case, which the Court discusses below, they do not require a different result in the ultimate disposition of this motion.

### III.    BURDEN OF PROOF FOR PERSONAL JURISDICTION INQUIRY

The Plaintiff bears the burden of persuading the Court that it has personal jurisdiction over the defendant. *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 674-675 (1st Cir. 1992). The Plaintiff must make a *prima facie* showing that the Court has jurisdiction over the Defendant under both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Id.* at 675. To make a

P*rima facie* showing, the Plaintiff must go beyond the pleadings and make affirmative proof of all facts essential to personal jurisdiction. *Id.* [3]

In determining whether it has personal jurisdiction, the Court accepts each of the Plaintiff's facts as true if they are properly documented in the record, *Foster-Miller, Inc. v. Babcock & Wilcox Can.,* 46 F.3d 138, 675 (1st Cir. 1995), even if disputed by the Defendant, *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009). The Court construes all properly documented facts in the light most favorable to the Plaintiff's jurisdictional claim, and it considers facts put forward by the Defendant only if they are not contradicted. *Id.*

## IV.    ANALYSIS

### A. Forum Selection Clause

The Defendant argues that it has not consented to jurisdiction in this Court because it did not accept the forum selection clause, and even if it did, this clause is both unreasonable and fails to confer jurisdiction on the Court. The Plaintiff responds that the Defendant is bound by a contract that contains an enforceable forum selection clause, and that consent to the jurisdiction of the Maine state courts is also consent to the jurisdiction of the federal district court in Maine.

---

[3]     The Court's consideration of affidavits and materials submitted by the parties to either support or defeat jurisdiction does not convert a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

1.    **Whether MB Construction is Bound by a Forum Selection Clause**

MB Construction's original Credit Application was rejected by BlueTarp on September 23, 2009. No offer of credit was made until BlueTarp contacted Mr. Mosser on January 29, 2010, and informed Mr. Mosser that BlueTarp had approved a $25,000 credit line for MB Construction. The Letter was sent to Mr. Mosser at MB Construction by BlueTarp on February 8, 2010. Conspicuously located on the front of the Letter are the words: "**Important Information about your Contract Supply LLC Account**." On the flip side of the Letter is the Account Agreement which states: "[y]our use of the BlueTarp Financial Account constitutes acceptance of the following terms and conditions." MB Construction began drawing on the line of credit immediately. When MB Construction used the line of credit, the contract became binding. The *Restatement (Second) of Contracts* defines acceptance of an offer as "a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." Restatement (Second) of Contracts § 501(1) (1981).

The terms of the contract contained in the Account Agreement state that "[t]he Agreement will be governed by the laws of Maine." The Account Agreement also contains a forum selection clause, which states: "[y]ou agree that in the event of default in payment, BlueTarp Financial may institute suit against you in the courts of the State of Maine, regardless of where you are geographically located or conduct business."

The Defendant argues that it did not consent to the forum selection clause because when it received the Credit Application from Contract Supply in September of 2009, it received an illegible first page and did not receive the second page containing the Account Agreement. The Court need not address the Defendant's somewhat dubious claim that it cannot be bound by an illegible application that it signed, because the record establishes that MB Construction was sent a legible Account Agreement the terms of which MB Construction accepted when it began to use the BlueTarp Account.

Regardless of whether MB Construction actually read the terms of the Account Agreement, it is bound by those terms. "As a matter of general contract law, parties to a contract are deemed to have read the contract and are bound by its terms." *Frances v. Stinson*, 760 A.2d 209, 217-18 (Me. 2009); *see* Restatement (Second) of Contracts § 211 cmt. b ("Customers do not in fact ordinarily understand or even read the standard terms.... But they understand that they are assenting to the terms not read or not understood, subject to such limitations as the law may impose.").

> The assertion "I didn't know what was in the contract that I signed" is made by litigants frequently but almost never successfully. Absent fraud, a person is deemed to know the contents of a contract that he or she signs ... [t]hus whether [the party] actually knew of the [clause] in their contracts is irrelevant; that knowledge is imputed as a matter of law.

*Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 20-21 (1st Cir. 2009) (quoting *Parler v. KFC Corp.*, 529 F. Supp. 2d 1009, 1014 (D. Minn. 2008)).

2.      **Scope of the Clause**

The Defendant next argues that even if the forum selection clause is enforceable against it, it has only consented to suit in Maine's state courts, not in the federal courts in Maine. The forum selection clause stated: "BlueTarp may institute suit against you in the courts of the State of Maine."

In *LFC Lessors, Inc. v. Pac. Sewer Maint. Corp.*, 739 F.2d 4 (1st Cir. 1984), the First Circuit held that a forum selection clause that stated that the contract "shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the law, and in the courts, of the Commonwealth of Massachusetts" should be interpreted to grant jurisdiction to the state courts, not to federal courts located within the state. The First Circuit noted that "of the Commonwealth of Massachusetts" modified both "law" and "courts," and concluded that since the law of the Commonwealth of Massachusetts necessarily meant state law, the courts of the Commonwealth of Massachusetts meant state courts. *Id.* at 6-7. The Court further remarked that any ambiguity in the contract should be construed against the drafting party. *Id.* at 7-8.

The "courts of the State of Maine" could be either "a term of sovereignty or simply a term of geography." *Id.* at 6. Other jurisdictions that have addressed this question have concluded that a forum selection clause's reference to the courts "of" a state limits jurisdiction to the state courts of the named state. The Fourth Circuit referred to a "widely accepted rule that forum selection clauses that use the term 'in

[a state]' express the parties' intent as a matter of geography, permitting jurisdiction in both the state and federal courts of the named state, whereas forum selection clauses that use the term 'of [a] state' connote sovereignty, limiting jurisdiction over the parties' dispute to the state courts of the named state." *Findwhere Holdings, Inc. v. Sys. Env't Optimization,* LLC, 626 F.3d 752, 755 (4th Cir. 2010) (collecting cases). But even if the language at issue in the BlueTarp Account Agreement is ambiguous, *LFC Lessors* counsels this Court to construe the language against the drafter, here BlueTarp. Accordingly, the Court holds that the Defendant consents only to the jurisdiction of the state courts of Maine not the federal courts in Maine.

The question, however, of whether this Court has jurisdiction remains. The forum selection clause states only that "BlueTarp *may* institute suit against you in the courts of the State of Maine." The fact that MB Construction consents to a suit in the state courts of Maine does not mean that BlueTarp is limited to adjudicating its dispute only in the Maine state courts, provided Blue Tarp can otherwise establish that the federal court has personal jurisdiction over MB Construction.

In *Autoridad de Energia Electrica de P.R. v. Ericsson*, 201 F.3d 15 (1st Cir. 2000), the plaintiff brought a contract claim in a Puerto Rico commonwealth court, and the defendant removed to federal court. The plaintiff moved to remand the case to commonwealth court because of a forum selection clause in the contract between the parties stating that the "parties agree to submit to the jurisdiction of the courts of the Commonwealth of Puerto Rico." The court found that the clause was

permissive and did not confer exclusive jurisdiction to the commonwealth courts. Accordingly, the defendant could not challenge the jurisdiction of the Puerto Rico commonwealth courts, but either party could bring suit in another court. Because the federal court otherwise had personal jurisdiction over the defendant, the case could be brought in federal court.

Contrary to the Plaintiff's assertion, *Ericsson* does not stand for the proposition that a defendant who has consented by forum selection clause to a state court's jurisdiction necessarily has consented to the jurisdiction of the federal courts located in that state. The holding in *Ericsson* is that where a non-exclusive forum selection clause specifies a state court, a federal court that has personal jurisdiction over the defendant may also hear the case. Because MB Construction has not consented to jurisdiction in the federal court in Maine, this Court must consider whether it otherwise has personal jurisdiction over MB Construction consistent with due process.

### 3.    Reasonableness of the Forum Selection Clause

The Defendant also claims that the forum selection clause is unenforceable under *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972), because it is unreasonable. The Court need not assess whether the Defendant has been able to meet this difficult burden, because it holds that MB Construction has not consented to suit in the federal court in Maine.

**B.     Personal Jurisdiction**

A court may assert two kinds of personal jurisdiction over a defendant: general and specific. *United Elect. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088-89 (1st Cir. 1992). The Plaintiff does not contend that this Court has general jurisdiction over MB Construction, which would require MB Construction to have continuous and systematic contacts with the State of Maine. The Court may assert specific jurisdiction over a defendant when the cause of action arises out of or directly relates to the defendant's contacts with the forum. *Id.* The Court must find that the Defendant had "minimum contacts to satisfy both Maine's long-arm statute, 14 M.R.S.A. § 704-A,[4] and the Due Process Clause of the Fourteenth Amendment. *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995). Due process requires that the assertion of personal jurisdiction over the defendant comply with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)).

The limits of Maine's long-arm statute are coextensive with the limits of the Due Process Clause of the Fourteenth Amendment. *Telford Aviation, Inc. v. Raycom Nat'l, Inc.*, 122 F. Supp. 2d 44, 45 (D. Me. 2000); *Nelson v. CGU Ins. Co. of Can.*, No.

---

[4]     "It is declared, as a matter of legislative determination, that the public interest demands that the State provide its citizens with an effective means of redress against nonresident persons who, through certain significant minimal contacts with this State, incur obligations to citizens entitled to the state's protection. This legislative action is deemed necessary because of technological progress which has substantially increased the flow of commerce between the several states resulting in increased interaction between persons of this State and persons of other states." 14 M.R.S.A. § 704-A(1).

Civ. 02-1930-BS, 2003 WL 1856439 at *2, n.2 (D. Me. April 10, 2003). Therefore, the Court's jurisdictional analysis will be under the Due Process Clause of the Fourteenth Amendment.

The First Circuit applies a three-part test to determine whether a defendant has contacts with a forum sufficient for the court to exercise specific personal jurisdiction over the defendant consistent with Due Process.[5] First, the case before the court must be sufficiently related to the forum state; second, the defendant must have purposefully availed himself of the privilege of doing business in the forum state; and third, assertion of jurisdiction over the defendant must be reasonable. *Astro-Med, Inc.,* 591 F.3d at 9.

This tripartite inquiry differs based on the type of claim that the plaintiff is bringing. Here, the claim is a breach of contract claim, and the Court's analysis in ascertaining sufficient contacts for personal jurisdiction over the Defendant concerns whether the Defendant's contacts with the forum "were instrumental either in the formation of the contract or in its breach." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.,* 196 F.3d 284, 289 (1st Cir. 1999). Merely entering into a contract with a person from another state does not grant that other state specific jurisdiction over the out-of-state contractor. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). Instead, the Court must look

---

[5] The Maine Law Court has adopted a three-part test for determining whether a court's exercise of personal jurisdiction over a defendant is consistent with due process. *See Murphy v. Keenan,* 667 A.2d 591, 593 (Me. 1995). For purposes of this case, "the difference between the test laid out by the Law Court and the three components laid out by the First Circuit is purely semantic," *Telford Aviation*, 122 F. Supp. 2d at 46 n.3, and the Court will apply the First Circuit's test.

at the prior negotiations of the parties, the contemplated future consequences of the contract, the terms of the contract, and the parties' actual course of dealing to determine whether there are minimum contacts sufficient to satisfy due process. *Id.* at 479.

## 1.    Relatedness

The relatedness prong of the three-part personal jurisdiction test "ensures fundamental fairness by protecting a defendant from being hauled into an out-of-state forum based on a single contact with that forum that is wholly unrelated to the suit at issue." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 623 (1st Cir. 2001). "[T]he claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." *United Elect., Radio and Mach. Workers of Am.*, 960 F.2d at 1089. "In this inquiry, foreseeability is critical." *Id.*

The Plaintiff's claims center around a contract for commercial credit between BlueTarp and MB Construction and MB Construction's failure to pay BlueTarp for charges made on its line of credit. The record shows that the Credit Application had BlueTarp's Maine address on it. The letters from BlueTarp initially rejecting the Credit Application and later confirming the $25,000 credit line — the credit line that is the basis of BlueTarp's contract and unjust enrichment claims — were on BlueTarp's letterhead using the Maine address. The terms of the Account Agreement referenced on both the application and the Account Agreement specified that Maine law would apply to any disputes and included a forum selection clause

permitting jurisdiction in the courts of the State of Maine. BlueTarp's credit check of MB Construction, conducted from Maine, was instrumental in the formation of the contract with MB Construction. So, too, was the conversation between Mr. Mosser and BlueTarp in Maine wherein Mr. Mosser was informed that MB Construction had been approved for a line of credit and Mr. Mosser and BlueTarp discussed billing. Ms. Millward was occasionally contacted from Maine when MB Construction had an overdue balance with BlueTarp, and Ms. Millward was informed that overnight payments should be sent to BlueTarp in Maine. On two occasions, MB Construction initiated contact with BlueTarp in Maine.

Although the number of contacts that MB Construction had with the State of Maine was limited, the contacts were related to the formation, performance, and breach of MB Construction's contract with BlueTarp that is the subject of this suit. The Court finds that the Plaintiff has made a *prima facie* showing that MB Construction's contacts with the State of Maine are sufficiently related to the Plaintiff's breach of contract and unjust enrichment claims.[6]

### 2.    Purposeful Availment

Unlike the relatedness inquiry, which seeks to determine whether the defendant's contacts are related to the claim before the court, "[t]he purposeful availment inquiry … focuses on the defendant's intentionality." *Swiss American*

---

[6]    The Plaintiff has cleared the hurdle on the relatedness prong by the slimmest of margins. Judge Singal reaches the opposite conclusion on the relatedness prong on a similar, though not identical, set of facts. *BTF v. Matrix Construction Co., Inc.* Docket No. 2:11-cv-290-GZS (Doc. No. 24-1) (D. Me. Feb 22, 2012).

*Bank*, 274 F.3d at 623. The defendant's contacts "must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *Foster-Miller, Inc.*, 46 F.3d at 144.

The purposeful availment prong of the test looks at whether the defendant's connection to the forum state was voluntary and whether the defendant's contacts with the forum state were such that the defendant could have foreseen being haled into court in the forum state. *Nowak*, 94 F.3d at 715 ("Our two focal points [in purposeful availment] are voluntariness and foreseeability") (citing *Ticketmaster-New York, Inc. v. Alioto,* 26 F.3d 201, 207 (1st Cir. 1994)). *See Burger King*, 471 U.S. at 474-75. "The purposeful availment requirement protects defendants from jurisdiction based solely on 'random, fortuitous, or attenuated contacts' or 'the unilateral activity of another party.'" *Telford Aviation*, 122 F. Supp. 2d at 47 (quoting *Burger King*, 471 U.S. at 475).

In determining purposeful availment, the court should consider the totality of the contacts, *New Life Brokerage Servs., Inc. v. Cal-surance Assoc., Inc.*, 222 F. Supp. 2d 94, 107 (D. Me. 2002), and "explore[] whether the defendant benefited from the forum-based contacts in a way that made jurisdiction foreseeable." *Id.* at 106.

In *Burger King*, the court held that a contract with a party from the forum state is itself insufficient to show purposeful availment; the court should consider prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing to determine whether the defendant has purposefully availed itself of the benefits and protections of the forum state. *Burger King,* 471 U.S. at 478-79. Entering into a contract with a choice of law provision providing that the contract will be governed by the law of the forum state is not sufficient to satisfy the purposeful availment prong of the test, though in combination with these other facts, can support a finding of purposeful availment. *Id.* at 482.

In *Telford Aviation*, the court found that it did not have personal jurisdiction over an Alabama defendant being sued by a Maine plaintiff for breach of a contract for charter aircraft services. The defendant called the plaintiff at its office in Maine because it wished to charter an aircraft located in Alabama owned by the plaintiff, and the parties entered into a contract wherein the defendant agreed to charter at least 250 hours of flight time in the following year. *Telford Aviation*, 122 F. Supp. 2d. at 46. The defendant failed to meet the contractually agreed upon hours. The plaintiff sued for breach of contract. *Id.* Subsequent to its initial contact with the plaintiff, the defendant had at least thirty-six additional contacts with the plaintiff's offices in Maine to schedule additional flights using the Alabama planes. *Id.* at 47.

The court held that the defendant's contact with Maine was the fortuitous result of the plaintiff's decision to handle Alabama contracts and schedule charter

flights for planes located in Alabama from its Maine office. *Telford Aviation*, 122 F. Supp. 2d at 47. The defendant's contacts with the plaintiff in Maine neither created continuing obligations to Maine consumers, nor allowed the defendant to benefit from the protection of Maine's laws. *Id.* Therefore, the court concluded that the defendant had not purposefully availed itself of the benefits and protections of Maine such that it could reasonably anticipate being involved in litigation in Maine as a result of these contacts. *Id.*

In contrast, in *Reed & Reed, Inc. v. George R. Cairns & Sons, Inc.*, 519 F. Supp. 2d 148 (D. Me. 2007), the defendant, New Hampshire-headquartered contractor George R. Cairns & Sons, Inc., ("**Cairns**") called and emailed Reed & Reed, Inc. ("**Reed**"), the plaintiff, a Maine subcontractor, to invite Reed to bid on a subcontract for Cairns's project in New Hampshire. *Reed & Reed*, 519 F. Supp. 2d at 151. The parties negotiated the terms of the subcontract by telephone and email. *Id.* The court found purposeful availment, relying on Cairns's "unprompted" correspondence with Reed to solicit the bid — an "affirmative choice by Cairns to reach out and contract with Reed, rather than with the subcontractor Cairns had initially planned to use," *id.* — and the resulting foreseeability of litigation in Maine. "It is not a strong showing of purposeful availment," the court noted, "but it is enough." *Id.* at 155.

MB Construction subcontracted with Contract Supply to purchase materials for its projects. Contract Supply required MB Construction to complete the Credit Application for a line of commercial credit with BlueTarp. MB Construction filled

out the Credit Application and returned it to Contract Supply in South Carolina. MB Construction's application for credit was not "unprompted," nor did it represent an "affirmative choice" to seek credit with BlueTarp as opposed to another commercial credit company; rather, it was the "fortuitous" result of doing business with Contract Supply. While BlueTarp and MB Construction did have telephone and email contact over the course of their business relationship, only a few of the contacts were initiated by MB Construction and the relationship was largely, and determinatively, mediated through Contract Supply, who billed MB Construction directly and insisted on being the one to contact MB Construction for collection when MB Construction's account with BlueTarp was past due. The inclusion of a Maine forum selection clause and choice of law provision in the contract between the parties does suggest that it was foreseeable to MB Construction that it could face litigation in Maine. However, the Plaintiff has failed to show that MB Construction's limited contacts with Maine were an intentional or voluntary invocation of the privileges of doing business in Maine. The Court finds that the Plaintiff has not met its burden of showing that MB Construction purposefully availed itself of a Maine forum.

### 3.    Reasonableness

A court's assertion of personal jurisdiction over a defendant must comport with traditional notions of "fair play and substantial justice," *Int'l Shoe*, 362 U.S. at 320, which are captured by what are known as the "gestalt factors," which determine the reasonableness of the court's assertion of personal jurisdiction over

the defendant. *See Foster-Miller, Inc.*, 46 F.3d at 150 ("[t]he hallmark of reasonableness in the context of personal jurisdiction is 'fair play and substantial justice'") (quoting *Int'l Shoe*, 326 U.S. at 320). The five gestalt factors are:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Foster-Miller, Inc.*, 46 F.3d at 150. If the plaintiff makes a sufficient but weak showing of relatedness and purposeful availment, the defendant's showing of unreasonableness may defeat jurisdiction. *Ticketmaster-New York, Inc.*, 26 F.3d at 210. Conversely, a plaintiff's strong showing of reasonableness may fortify its own borderline proof of relatedness and purposeful availment to allow jurisdiction. *Id.*

The Account Agreement could have been but was not written to provide for jurisdiction in the state and federal courts of the State of Maine. Although it is no more burden on the Defendant to litigate in the state courts in Maine than it would be to litigate in the federal courts in Maine, "traditional notions of fair play and justice" favor holding BlueTarp to the agreement that it drafted. The state's interest in adjudicating the dispute and the Plaintiff's interest in obtaining convenient and effective relief can be vindicated by litigating in the courts of the State of Maine as the parties contemplated in the Account Agreement. The Court finds that the Plaintiff has not overcome, on the reasonableness prong, its lack of proof on the

purposeful availment prong and concludes that exercise of personal jurisdiction over the Defendant would not comport with notions of "fair play and substantial justice."

Because the Court concludes that it does not have personal jurisdiction over the Defendant, it need not consider Defendant's other grounds for dismissal.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss for lack of personal jurisdiction is GRANTED and this case is hereby DISMISSED for lack of personal jurisdiction.

SO ORDERED.

/s/ Nancy Torresen
NANCY TORRESEN
UNITED STATES DISTRICT JUDGE

Dated this 1st day of March, 2012.